GUIDRY, J.
| ^Claimant, James Bowman, III, appeals a judgment of the Office of Workers’ Compensation (OWC) finding he failed to meet his burden of proof to relate-his disabling injury to his workplace accident. Finding no manifest error in the OWC judge’s conclusions, we affirm.
FACTS AND PROCEDURAL HISTORY
On April 22, 2013, the claimant fell backwards to the ground while attempting to break up a fight between two male juvenile detainees[1] at the Terrebonne Parish Juvenile Detention Center. At the time of the accident, the claimant was working in the course and scope of his-employment as a juvenile care associate. Several accident reports were completed for the incident. The claimant reported experiencing “some tightening” on his right side and “some discomfort” in his neck immediately following the incident. He was instructed by his supervisor, Lieutenant Renee Harris, to see Edward Davis, Jr., a paramedic who was on duty at the time of the incident. After seeing Mr. Davis, the claimant reported back to his post and completed working his shift for the night. The claimant continued to work without missing any days until July 2013.
On July 19, 2013, the claimant contacted Fay Giroir, the workers’ compensation *611 claims adjuster for the Department of Risk Management with the Terrebonne Parish Consolidated Government, to inform her that he had been off work and that his absence from work may be due to the fall that occurred on April 22, 2013. After taking the claimant’s statement and investigating the matter, Ms. Giroir decided to deny the claim based on a “lack of documentation of an injury occurring on and related to the fall of April 22, 2013.”
The claimant filed a disputed claim for compensation with the OWC on ^August 27, 2013. Following a hearing before an OWC judge on March 14, 2014, the claimant’s disputed claim for compensation was dismissed with prejudice on May 19, 2014. The OWC judge found that the claimant did not meet his burden of proving by a preponderance of the evidence that his current medical condition was causally related to his April 22, 2013 workers’ compensation accident. Claimant devolutively appeals the dismissal of his disputed claim.
DISCUSSION
The only error that the claimant asserts on appeal is that the OWC judge erred in finding that the employer rebutted the presumption of causation and that the claimant’s medical condition was not' causally related to his April 22, 2013 accident.
An employee in a workers’ compensation action has the burden of establishing a causal link between the accident and the subsequent disabling condition. Starkey v. Livingston Parish Council, 12-1787, p. 6 (La.App. 1st Cir.8/6/13), 122 So.3d 570, 574. A claimant must establish a causal connection between the accident and the resulting disability by a preponderance of the evidence. Causation is not necessarily and exclusively a medical conclusion. It is usually the ultimate fact to be found by the fact finder based on all credible evidence. Carmena v. St. Anthony’s Home, 11-1181, pp. 3-4 (La.App. 1st Cir.5/2/12), 92 So.3d 539, 541.
 An appellate court, in a workers’ compensation case, as in other cases, is bound by the manifest error rule and may not set aside the findings of fact unless they are clearly wrong or manifestly erroneous. Carmena, 11-1181 at pp. 4-5, 92 So.3d at 542. The fact-finder’s determinations as to whether the worker’s testimony is credible and whether the worker has discharged his burden of proof are, most certainly, factual determinations that should not be disturbed on ^appellate review unless clearly wrong or manifestly erroneous. Ardoin v. Firestone Polymers, L.L.C., 10-0245, pp. 5-6 (La.1/19/11), 56 So.3d 215, 219.
When an employee suffers from a preexisting medical condition, he may still prevail if he proves that the accident “aggravated, accelerated, or combined with the disease or infirmity to produce death or disability for which compensation is claimed.” Starkey, 12-1787 at p. 6, 122 So.3d at 574 (quoting Walton v. Normandy Village Homes Association, Inc., 475 So.2d 320, 324 (La.1985)). An otherwise healthy employee with a preexisting condition is entitled to benefits if he can prove that his work-related accident contributed to, aggravated, or accelerated his injury. An employee’s work-related accident is presumed to have caused his disability when he proves that before the accident, he had not manifested his disabling symptoms; that commencing with the accident, disabling symptoms appeared; and that there is either medical or circumstantial evidence indicating a reasonable possibility of a causal connection between the accident and the disabling condition. Louisiana Safety Association of Timbermen v. Carl *612 ton, 12-0775, p. 9-10 (La.App. 1st Cir.12/21/12), 111 So.3d 1076, 1083.
However, as recognized by the Louisiana Supreme Court in Walton, there are limitations to the invocation of the presumption:
A claimant’s disability is presumed to have resulted from an accident, however, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing either that there is sufficient medical evidence to show there to be a reasonable possibility of causal connection between the accident and the disabling condition, or that the nature of the accident, when combined with the other facts of the case, raises a natural inference through human experience of such a causal connection.
Walton, 475 So.2d at 324 (citations omitted).
| BWhiIe it is undisputed that the claimant suffered an on-the-job injury, at issue is whether that injury caused the disability claimed. Immediately following the accident, the claimant reported some tightening on his right side and discomfort in his neck, but after being cleared by Mr. Davis, a paramedic, he completed his shift for the night. Accident reports completed by his supervisors indicate that the claimant sustained a “sprain/strain” injury to his neck and back. Thereafter, the claimant did not communicate any further complaints or problems of injury and continued working without missing any scheduled work days until July 2013.
On July 2, 2013, the claimant went to the Cardiovascular Institute of the South complaining of pain in his left leg while walking and reporting the onset of his complaint as being three weeks prior to his visit. On finding that the etiology of his left leg pain was “non-vaseular,” the claimant was advised to follow up with his primary care physician. On July 18, 2013, the claimant went to see Dr. Scott Haydel, his primary care physician. The claimant complained to Dr. Haydel of burning pain in his left leg, back pain, legs giving out, and trouble going from sitting to standing, starting approximately two months prior to the visit. Dr. Haydel ordered an MRI of the claimant’s lumbar spine based on a diagnosis of left lower extremity radiculo-pathy and further ordered the claimant to remain off work until further notice. The MRI revealed that the claimant had “[m]ultilevel degenerative disk disease changes of the lumbar spine ... with central canal stenosis at L3^1 and L4-5.” It was after his visit to Dr. Haydel that the claimant first notified the employer of a possible workers’ compensation claim related to the April 22, 2013 workplace accident.
At the workers’ compensation hearing, the claimant admitted that he did not complain to his supervisors or co-workers of any kind of problems after the date of the accident. He explained that during that time, he had been evaluated |fiand had received a low grade for missing days, so he did not want to miss any more days of work because of injury. He stated that he started developing leg pain about three weeks to a month following the April 22, 2013 accident, but he thought the pain and weakness in his legs was due to a blockage or circulation problems, so he went to the Cardiovascular Institute of the South regarding his complaints. After learning that circulation was not the cause of his complaints, the claimant went to his primary care physician, Dr. Haydel, at the recommendation of the Cardiovascular Institute of the South. He testified that it was not until Dr. Haydel inquired whether he had fallen recently that he connected *613 his leg pain and problems to the April 22, 2013 accident.
In her reasons for judgment, the OWC judge found that the employer had rebutted the presumption that the claimant’s current disability was caused by the workplace accident. In so finding, the OWC judge explained:
What is important to note about the presumption the employee is relying on is that the case law also requires the disabling condition to appear and continually manifest itself afterwards, in addition to providing that there is sufficient medical evidence to show that there is a connection of the disabling condition.
The problem the Court saw in the claimant’s case is that there was no evidence of a disabling condition. There was conflicting evidence with the employee’s testimony, the employer’s testimony, and the medical documentation. When the conclusion is evenly balanced or not met, the party has not reached his preponderance of the evidence burden of proof. This Court could not conclude the complaints stated by the employee were more likely connected to the slip and fall as to other options. The employee worked after the accident for several months. The employee showed no sign of disabling conditions to his neck or his back. He did not complain to coworkers or supervisors. He did not seek medical treatment, and when he did seek medical treatment and when he informed the health care providers of the onset of his aches, those dates did not correlate to the date of the accident.
... That coincides with the fact and the employer’s position that the employee was able to work after this accident without consequence. He was able to do his job fully and there were no problems. And, therefore, any subsequent issues that arose are not related to this accident but could possibly be related to his age[2] |7and his preexisting condition that is now starting to flare up unrelated to the workers’ compensation event.
Presumptions can be rebutted. This Court found the defendant rebutted the presumptions. There are no health care providers that connect the dots and say this slip and fall on April 22, 2013 is the reason why this employee is suffering today. The health care providers are note takers. They wrote down what the employee said; however, they did not draw the conclusions
When you are dealing with presumptions you still need medical documentation not just to be a record keeper and say what the employee says. You also need the medical provider to say that there is a causal relationship. Especially as in this case, when the defendant brings rebuttable documentation, in the form of medical records which show the employee did not correlate the onset of symptoms with the date of the accident.
Also, if you look at the cd evidence, it is quite clear that the employee was not encumbered. Yes, there was an accident. Yes, he reported aches to his back and neck on the day of the slip and fall. You can say he had an injury, but injuries can resolve. Injuries don’t have to linger. Injuries can be right there at that point in time and subside. And that’s the problem here. The evidence the employer presented counteracts the employee saying he was having difficulties.
The OWC judge went on to discuss the actions of the claimant displayed on a video recording of the claimant while at work *614 in the days following the accident. The video showed the claimant at work over several different days, including up to a few days prior to his stopping work.[3] Based on her review of the video, the OWC judge stated “[t]hese are movements and activities that don’t correlate with what the employee is claiming.”
Generally, the surrounding circumstances of the case indicate what effect a court should give to the length of time a worker takes to report an accident. Trent v. Triad Electric & Controls, Inc., 09-1192, p. 6 (La.App. 3d Cir.4/7/10), 34 So.3d 484, 490. In a workers’ compensation case, whether a claimant has carried his burden of proof and whether testimony is credible are questions of fact to be determined by the OWC. Louisiana Safety Association of Timbermen, 12-0775 at p. 8, 111 So.3d at 1082. Under the manifest error rule, lathe reviewing court does not decide whether the factual findings are right or wrong, but whether they are reasonable. If the fact finder’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where two permissible views of the evidence exist, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. Louisiana Safety Association of Timbermen, 12-0775 at p. 8-9, 111 So.3d at 1083.
With these precepts in mind, and being constrained by the applicable standard of review, we cannot conclude that the 'findings of the OWC judge in this case are manifestly erroneous. While the claimant testified that he had no previous back problems,[4] and as such, he could not reasonably relate the April 22, 2013 incident to his leg problems,[5] we must yield to the great deference owed to the factual findings of the OWC judge. See Penton v. City of Hammond Police Department, 07-2352, pp. 8-13 (La.App. 1st Cir.5/2/08), 991 So.2d 91, 97-101. Accordingly, we reject the claimant’s assertion of error in this appeal.
CONCLUSION
For the foregoing reasons, we affirm the judgment of the Office of Workers’ Compensation. All costs of this appeal are assessed to the claimant, James Bowman, III.
AFFIRMED.

. At trial, Mr. Bowman testified that the boys appeared to be sixth graders “or so.”

2. The claimant was 65 years old at the time of his accident, and just a few weeks shy of his 66th birthday, when he first sought medical treatment for his complaints in July 2013.

. The events depicted on the video occurred on the following dates: April 22-24, 2013 and June 17, 22, 24, 27, and 28, 2013.

. However, we observe that in his medical records from the Cardiovascular Institute of the South, a December 4, 2007 "History and Physical” report states that the claimant complained of right thigh pain while walking, but not constantly, some numbness, and pain mostly while standing. The report also states that the claimant reported a "previous back injury many years ago.”

.The claimant had filed only one previous claim for workers’ compensation, for an eye injury that occurred when he was employed with a security company.